IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERY RUSSELL JOHNSTON,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:09-cr-58 CW |

This matter is before the court on Defendant Jeffery Russell Johnston's motion for inquiry into competency (*See* Dkt. Nos. 29 and 31). For the reasons set forth below, the court finds that Mr. Johnston is competent to stand trial.[1]

**FACTUAL BACKGROUND**

On January 28, 2009 a grand jury returned a one count indictment against Mr. Johnston for bank robbery. The Indictment alleges that Mr. Johnston took $1,600 in United States currency by force, violence, and intimidation from the employees of an FDIC insured Chase Bank in Salt Lake City, Utah. After the arraignment, Mr. Johnston filed the present motion for inquiry into competency.

After Mr. Johnston filed that motion, two doctors, Dr. Lisa Hope, a forensic psychologist for the Federal Bureau of Prisons and Dr. Vickie Gregory, performed examinations of Mr.

---

[1] The court notes that it has had this motion under advisement for over thirty days. On its own motion, the court finds that the additional time it took to resolve this motion is warranted under 18 U.S.C. § 3161(h)(7)(A) because the issue of Mr. Johnston's competence was a complex one and the court needed additional time to fully and carefully consider it. Accordingly, the time for which this motion has been under advisement is excluded under the Speedy Trial Act.

Johnston that included competency evaluations. Those examinations began in March 2009 and continued through January 2011. Dr. Hope and Dr. Gregory both diagnosed Mr. Johnston with schizophrenia. The doctors reached different conclusions, however, regarding Mr. Johnston's competency to stand trial: Dr. Hope concluded that he is competent and Dr. Gregory concluded that he is not. Below is an overview of the doctor's testimony regarding their testing and conclusions about Mr. Johnston, as well as other matters the court heard and considered during the hearings on this matter.

### A. Dr. Hope's Evaluation of Mr. Johnston

On September 24, 2009 Mr. Johnston arrived at the Metropolitan Detention Center ("MDC") in Los Angeles, where Dr. Hope is employed; Mr. Johnston left the MDC February 18, 2010. (Tr. at 102-3.) Dr. Hope conducted a comprehensive evaluation of Mr. Johnston that included extensive background interviewing and testing. Additionally, she reviewed Mr. Johnston's records and observed Mr. Johnston while he was at the MDC. (Tr. at 100.) Dr. Hope also gathered information about Mr. Johnston from those people in the MDC that had interaction with Mr. Johnston. (*Id.*) Dr. Hope spent at least 8 - 10 hours directly interviewing Mr. Johnston and "pretty constant" informal observations throughout his time at the facility. (Tr. at 101.)

While at the MDC, Mr. Johnston was seen by two psychiatrists and his medication was adjusted. (Tr. at 103.) Mr. Johnston was initially agitated and tangential, but was eventually stabilized on medication, after which he showed significant improvement. (Tr. at 104.) When he was stabilized, he denied that he was experiencing hallucinations, was able to interact with staff

and other inmates in the unit, used appropriate language, and appeared at times to enjoy testing and getting correct answers. (Tr. at 107 - 14.) Mr. Johnston was housed in a general population unit where he interacted with other inmates and was observed to function well. (Tr. at 107.)

While at the MDC, Mr. Johnston remarked to Dr. Hope that he was "unsure about whether or not he had any confidence in her [his lawyer] and how she was proceeding with his case so far. Mostly because everything was taking too long." (Tr. at 120-21.)

Dr. Hope administered, through a supervised intern, the Wechsler Adult Intelligence Scale, fourth edition (WAIS IV) on Mr. Johnston. He scored in the average range. (Tr. at 109.) Dr Hope testified that this test is used to identify any significant difficulties in cognitive functioning. (Tr. at 112.)

Mr. Johnston was also administered the Minnesota Multiphasic Personality Inventory, second edition (MMPI) to identify personality indices and any kind of pathology. (Tr. at 111-12.) The MMPI indicators suggested Mr. Johnston minimized or under reported symptoms of mental illness, and that he demonstrated some anxiety, anger, and paranoia. (Tr. at 112.) Nonetheless, Dr. Hope testified the tests revealed no "red flags" or significant concerns that would cause additional tests to be mandated. (Tr. at 114.)

Dr. Hope also arranged for the Revised Competency Assessment (RCAI), a semi-structured competency measure, to be conducted on Mr. Johnston in the MDC and a second time in the Davis County Jail. This test is administered to ascertain a person's understanding of the criminal charges and the court proceedings and one's ability to assist counsel. A semi-structured interview allows the test administrator the ability to go in depth on responses that

are incomplete. (Tr. at 115.) Dr. Hope testified that Mr. Johnston's initial response was almost always "I don't know, or I can't guess," but when Mr. Johnston was given some attention and encouragement, he was able to answer questions correctly. (Tr. at 118, 123.)

Dr. Hope testified that Mr. Johnston's primary concern, both in the MDC and during their visit two days prior to the competency hearing, was his health problem. (Tr. at 126.) Dr. Hope testified that Mr. Johnston was "looking for assistance ... and he wanted to go on probation or get the surgery for his feet. . ." (Tr. at 145.) Mr. Johnston was "very clear that ... regarding his rationale as to why he felt he needed to be in an incarcerated facility where he could get treatment." (Tr. at 145.) Dr. Hope also testified that from her perspective, Mr. Johnston has maintained over the course of this matter a consistent recitation of the facts of the alleged crime, and at times would not talk about portions of the facts for fear of incriminating himself. (Tr. at 123.)

Dr. Hope diagnosed Mr. Johnston as schizophrenic, paranoid, with a history of alcohol use. (Tr. at 123.) Dr. Hope stated that "throughout his time in our institution [the MDC] there was absolutely no suggestion of a [sic] dementia and the same on Monday." (Tr. at 124.) Having spent several months testing and observing Mr. Johnston, and then re-testing him again prior to the competency hearing, and further observing Mr. Johnston in court, Dr. Hope opined that Mr. Johnston "does have a major mental illness of schizophrenia, but he is at this time able to understand the nature and consequences of the proceedings and also able to properly assist in his defense." (Tr. at 208.)

### B.     Dr. Gregory's Evaluation of Mr. Johnston

Dr. Gregory conducted several examinations of Mr. Johnston between March, 2009 and September, 2010. Dr. Gregory's tests included a battery of mainly neuropsychological tests, competency assessments, interviews and a review of records. Dr. Gregory testified that as part of her structured interview, she used her own set of questions adapted to suit her diagnostic goals. (Tr. at 59-60.) Specifically, her forensic evaluation is based upon a competency instrument that was a pre-cursor version of the test Dr. Hope used. (Tr. at 219.) Dr. Gregory testified that she has updated her questionnaire "over time." (Tr. at 87.)

During her first visit with Mr. Johnston on March 17, 2009, Dr. Gregory testified she spent 3 - 4 hours with Mr. Johnston and was able to administer some tests and a clinical interview. (Tr. at 10 -11.) Dr. Gregory stated that "because his medication issue was not necessarily clear at that point . . . he was having delusions and he did have an active psychotic process to some degree" and so she made no interpretations (Tr. at 14.) Dr. Gregory testified that based on Mr. Johnston's WAIS-IV scores, "there were some concerns there, but these scores did not necessarily mean that he was not competent." (Tr. at 20.)

Dr. Gregory next saw Mr. Johnston on August 18, 2009, wherein she testified he was taken off medication, his psychosis had increased, and she was unable to test him. (Tr. at 22.) Dr. Gregory reported that she conducted testing on the Mr. Johnston on March 2, 2010, after he had returned from the MDC. Dr. Gregory noted that while Mr. Johnston appeared stabilized on medication in the MDC, upon arriving back in Utah, he was off his medications for a short time, and she described him as agitated and hostile during their visit. Dr. Gregory further testified that

Mr. Johnston has "been that way mostly when I have seen him." (Tr. at 29.) Dr. Gregory encouraged Mr. Johnston to take his medications that he was prescribed in the MDC "because those appeared to work." (Tr. at 30.) Numerous tests were administered to Mr. Johnston at that meeting, though Dr. Gregory testified that she wanted Mr. Johnston "stabilized before I did any firm conclusions . . . because he was becoming more psychotic without medication." (Tr. at 31.)

On May 21, 2010, Dr. Gregory again met Mr. Johnston. On that occasion, Mr. Johnston was angry because he blamed Dr. Gregory for him being placed in isolation. (Tr. at 32.) No testing was completed at that meeting. The final time Dr. Gregory visited with Mr. Johnston was on September 2, 2010. During that visit, Mr. Johnston was only allowed one hand to be uncuffed, and "he wasn't happy to see [Dr. Gregory]." (Tr. at 34.) Mr. Johnston stated he was thinking of firing his counsel, Sharon Preston, who was also present during that meeting. (*Id.*) Mr. Johnston further stated he was not going to do this [tests], and stated he "did not want to sit through two hours of this bullshit." (*Id.*) Despite Mr. Johnston's behavior, Dr. Gregory conducted testing. (*Id.*) Mr. Johnston was given the MacArthur Competency Scale which concluded with Mr. Johnston cursing and not explaining his conclusions, which resulted in zero scores. (Tr. at 45-6.) Dr. Gregory testified that she tried "to encourage him to answer the questions, but he became belligerent and cursed at me some more so I just asked the questions and went on." (*Id.*)

In sum, during each meeting Dr. Gregory conducted with Mr. Johnston, Mr. Johnston was displaying behaviors such as hostility, agitation, pacing, cursing, and unwillingness to cooperate with the testing procedures. (Tr. at 22, 29, 32, 34, 45, 46, 48, 67, 71, 90.)

Notably, in spite of these difficulties, there was one test Dr. Gregory administered to Mr. Johnston on which he improved over time. Specifically, Mr. Johnston improved on the Complex Ideational Test, which Dr. Gregory has stated is "directly relevant to the competency proceedings . . . understanding and processing the information in order to properly assist defense counsel." (Tr. at 88.) On this test, Mr. Johnston improved and scored in the 84th percentile on "auditory information processing of language." (Tr. at 89.)

Dr. Gregory testified that she and Mr. Johnston spoke about the resolution to this case, and specifically that he thought there would be a plea bargain. (Tr. at 54.) Mr. Johnston also maintained that as an outcome of the case he wanted treatment of a medical issue. (Tr. at 53-54.) Mr. Johnston also had a discussion with Dr. Gregory about the potential length of his sentence. Mr. Johnston advised Dr. Gregory he was going to spend three years in prison. Dr. Gregory testified that they argued over the term of imprisonment because she did not trust the source of where he obtained his information over the information received by his lawyer

Dr. Gregory found that Mr. Johnston suffers from schizophrenia, paranoid type, and further diagnosed Mr. Johnston with dementia. Dr. Gregory's assessment of Mr. Johnston is that he is not competent to proceed to trial.

**C.     Mr. Johnston's Counsel's Proffer about Mr. Johnston's Competency**

In addition to the expert opinion of Ms. Gregory, Ms. Preston has made proffers during the competency hearing touching on Mr. Johnston's ability to assist her. Specifically, Ms. Preston stated that Mr. Johnston is not able to assist her in realistic problem solving. In other words, while she believes that Mr. Johnston is able to grasp issues and problems in his life, he is

not capable of realistically working toward resolving them. As an example of this asserted problem, Ms. Preston states Mr. Johnston has often expressed concern with a certain health problem. She explained that when she arranged for treatment of that problem, however, Mr. Johnston refused to acknowledge that there was a proposed solution and continued to fret about the problem.

  D.  **The Court's Observation of Mr. Johnston**

In addition to the above evaluations and proffer, the court also had several opportunities to observe Mr. Johnston during hearing on this issue. The court generally observed Mr. Johnston to be attentive, appropriately behaved, and actively engaged in the proceedings. On various occasions, the court saw Mr. Johnston lean over to speak to Ms. Preston. Mr. Johnston also appeared somewhat chagrined when Dr. Hope testified about the time when Mr. Johnston told Dr. Hope that he lacked confidence in Ms. Preston.

At one point during the hearing, Mr. Johnston advised Ms. Preston that he had a hearing impairment, and that he wanted to hear what was going on in the courtroom. (Tr. at 7.) Later on in the hearing, the court halted an examination because the batteries in Mr. Johnston's earphones ran out. Mr. Johnston alerted the court of this problem, and the court gave new earphones to Mr. Johnston so he could continue to listen to the proceedings. (Tr. at 120.)

## ANALYSIS

I.  **BURDEN OF PROOF**

The court must find by a preponderance of the evidence whether a defendant is competent to stand trial. *United States v. Whittington*, 586 F.3d 613, 617 (8th Cir. 2009) (citing 18 U.S.C. §

4241(d)). Federal statute does not define who bears "the burden of proving whether a defendant is competent to stand trial," and the circuits differ on this issue. *Id.* (citation omitted). Generally, "[t]he allocation of the burden of proof to the defendant will affect competency determinations only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." *United States v. Wayt*, 24 Fed. Appx. 880, 883 (10th Cir. 2001) (quoting *Medina v. California*, 505 U.S. 437, 441 (1992)). In this case, the government agrees that Mr. Johnston suffers from a severe mental illness, and it is clear that such illness raises serious questions as to competency. Accordingly, allocation of the burden is necessary.

In the Tenth Circuit, the issue has not been clearly decided, but there is a strong indication that the burden falls on the defendant. *Compare United States v. Sanchez-Gonzalez*, 109 Fed. Appx. 287, 290 (10th Cir. 2004) (indicating the defendant bears the burden of proving incompetency); *United States v. Smith*, 521 F.2d 374, 377 (10th Cir. 1975) (same), *with Wayt*, 24 Fed. Appx. 880, 883 (10th Cir. 2001) (noting that the federal statute does not allocate the burden and finding that the court "need not resolve the question" at that time of who bears the burden); *United States v. Mitchell*, No. 2:08cr125, 2010 U.S. Dist. LEXIS 18065, at *8–12 (D. Utah Mar. 1, 2010) (concluding that who bears the burden of proof is not settled in the Tenth Circuit). Moreover, "[i]n dicta, the United States Supreme Court has indicated that the burden under Section 4241 lies with the defendant." *Mitchell*, 2010 U.S. Dist. LEXIS 18065, at *8–9 (citing *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) (stating "Congress has directed that *the accused* in a federal prosecution must prove incompetence by a preponderance of the evidence")

(emphasis added)). On this basis, the court concludes that Mr. Johnston must prove by a preponderance of the evidence that he is incompetent to stand trial.

## II. STANDARD FOR COMPETENCY

### A. Two-Prong Test

"The Constitution forbids the trial of a defendant who lacks mental competency." *United States v. deShazar*, 554 F.3d 1281, 1285 (10th Cir. 2009) (citing *Indiana v. Edwards*, 128 S. Ct. 2379, 2383 (2008)). "The test for competency to stand trial asks whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *deShazar*, 554 F.3d at 1286 (quotations and citations omitted). This standard "is reflected in 18 U.S.C. § 4241," which states a person is incompetent if:

> the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

*United States v. Rodriguez*, No. 2:08cr61, 2009 U.S. Dist. LEXIS 81024, at *27 (E.D. Pa. Sept. 8, 2009) (quoting 18 U.S.C. § 4241(d)). Mr. Johnston's challenge to competency is centered on the second prong, his contention that he lacks sufficient present ability to consult with his counsel and properly assist in his defense.[2]

---

[2] Mr. Johnston's counsel has noted Mr. Johnston wishes to be found competent by this court. Because it would be unconstitutional to try Mr. Johnston if he is indeed incompetent, the court cannot simply accede to his request now that a substantial question has been raised about his competency. Rather, the court is required to resolve this issue on the facts on the record.

B.       Mr. Johnston's Ability to Consult with Counsel

Mr. Johnston argues that his ability to consult with his counsel is compromised to the point of incompetency, relying largely on Dr. Gregory's dementia diagnosis of him, combined with his paranoia. Dr. Gregory, however, is the only doctor who has diagnosed Mr. Johnston with dementia. Dr. Hope testified that she essentially ruled out dementia in Mr. Johnston. Accordingly, she did not administer additional tests such as the Dementia Rating Scale, Second Edition, the primary test utilized to see if dementia has progressed or if there is some kind of impairment in relation to dementia. Notably, Dr. Gregory also did not administer that test to Mr. Johnston. The contract psychiatrist who evaluated Mr. Johnston at the MDC also did not diagnose him with dementia.

Dr. Gregory also appears to have conducted her evaluation of Mr. Johnston at times when his mental illness was causing him behavioral issues. Moreover, her meetings with Mr. Johnston took place mainly in jails, and often at times when Mr. Johnston was in distress and restrained. On the other hand, Dr. Hope made her evaluations not only during times when Mr. Johnston's behavior was inappropriate, but also at times when he was stabilized on appropriate medications. She was also able to incorporate information about Mr. Johnston from non-clinical settings, such as his interactions with other individuals and staff at the MDC.

On this record, it is more likely than not that Mr. Johnston is not suffering from dementia. Moreover, because Dr. Hope was able to observe Mr. Johnston over a longer period of time in more stable circumstances, the court has greater confidence in her conclusion that Mr. Johnston is competent to proceed to trial. This conclusion is bolstered by the court's own observations of

Mr. Johnston during these proceedings.

As for Ms. Preston's concerns about Mr. Johnston's ability to help her solve problems, the court agrees that Mr. Johnston's apparent inability to consistently grasp and recall solutions raises questions about competency. As noted by District Judge Dale Kimball in a recent opinion on a defendant's competency, however "[ultimately. . . the extent to which [a defendant] cooperates with counsel is irrelevant. The question is whether he has a sufficient present *ability* to consult with his lawyer with a reasonable degree of rational understanding." *U.S. v. Mitchell*, 706 F. Supp. 2d 1148, 1227 (D. Utah 2010). In addition to Ms. Preston's statements, the court has also heard that Mr. Johnston has exhibited an understanding of a range of potential solutions to the charges he now faces, including plea bargaining. It appears that Mr. Johnston has expressed a preference for a plea bargain and appears to believe that this course will assist him in resolving his health issue. These facts tend to show that Mr. Johnston is sufficiently able to problem solve to properly assist his counsel in his defense, even if his ability to is indeed compromised by his mental health issues.

For all these reasons, the court concludes that Mr. Johnston has failed to met his burden of demonstrating by a preponderance of the evidence that he cannot properly assist in his defense. Accordingly, he is competent to proceed to stand trial.

DATED this 1st day of September, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Judge